### CRAIN v. YATES. (No. 6967.)

(Court of Civil Appeals of Texas. Galveston. June 21, 1915.)

CONTRACTS ⬡➔28—BUILDING CONTRACTS—EXISTENCE.

A contractor constructed for an owner two houses, each for a fixed sum. When the second house was nearing completion, the owner asked the contractor to figure on erecting a third house, to be transferred to a third person, and told the contractor that he must know what it would cost before he could tell whether he would be able to make a deal with the third person. The contractor customarily permitted his carpenter foreman to figure the cost of labor and lumber on jobs, and the foreman, knowing of the negotiations, figured on the cost of construction of the third building, and he estimated the cost at a specified sum. The foreman told the contractor that he had made his estimate to the owner, and without further negotiations the contractor, during the owner's absence, began work on the third building and completed it according to the plans. *Held*, that there was a contract binding the contractor to complete it for the specified sum.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 133–140, 1755, 1782–1784, 1785½, 1820, 1821; Dec. Dig. ⬡➔28.]

Appeal from Harris County Court; Clark C. Wren, Judge.

---

Action by Henry H. Yates against E. L. Crain. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Townes & Vinson, of Houston, for appellant. Cooper & Merrill, of Houston, for appellee.

McMEANS, J. Henry H. Yates sued E. L. Crain in the county court at law of Harris county, alleging substantially that at the special instance and request of the defendant he agreed to build on certain premises of the defendant in Montrose addition to the city of Houston, a frame-stucco one-story, six room dwelling house, complete, and ready for occupancy, with water and light connections, and that the defendant agreed to pay him the reasonable value of the work and material to be furnished by the plaintiff in the construction of the house; that in pursuance of the terms of his agreement, he erected and completed the house, and that defendant accepted it as in compliance with the contract; that the reasonable value of the work and material used in the construction of the house was $2,500; that defendant paid him on said job $2,140, but failed and refused to pay the balance of $360, for which the suit was brought. Defendant admitted that the plaintiff agreed to erect for him the kind of house referred to in the petition, but denied that he ever agreed or promised to pay the plaintiff the reasonable value of the work and material furnished on the job, but that, on the contrary, the plaintiff contracted and agreed to erect and complete the house, with water and light connections, for a fixed sum, to wit, $2,140 cash, upon the completion of the work. Defendant alleged he had paid the $2,140 as agreed, and admitted that he had refused to pay the balance of $360, or any other amount claimed by the plaintiff. By supplemental petition plaintiff traversed the affirmative allegations of the answer, and additionally alleged that defendant, if he did not expressly agree to pay the reasonable value of the work and material furnished, was impliedly bound to do so by his acceptance of the work after completion. Other allegations were made, but the court made no findings of fact thereon, and it will be unnecessary to make further reference to them. The case was tried before the court without a jury and resulted in a judgment for plaintiff for $278, from which the defendant has appealed.

By his first assignment of error appellant contends that the judgment is contrary to the law and to the facts found by the court, and by his second assignment he urges that:

"The court erred in its conclusion of law in holding that under the facts found no contract for the erection of the proposed house existed between Crain and Yates concerning the price to be paid therefor, and that in the absence of a contract, fixing the price, the price to be paid was the reasonable value of the work and the materials furnished and the labor done, when combined in a completed house."

The court upon proper request reduced to writing and filed its findings of fact, which we here copy in full:

"Crain was a real estate man, engaged in the business of furnishing to purchasers completed properties, including houses and lots. Yates was a contractor, engaged in the business of building houses. These two parties had a conversation or conversations which led up to the business transactions subsequently between them, wherein Yates in order to get the business of Crain, agreed to figure his prices for building operations contemplated on the basis of actual cost and 7½ per cent. thereon as profits to the contractor. Subsequently, Crain and Yates entered into a written contract, whereby Yates was to build a house, referred to between the parties in this case as Crain No. 1 job. After No. 1 was completed by Yates, and paid for by Crain, another house was built by Yates for Crain, and paid for by the latter. During the erection of these two houses, one Lindsay was carpenter foreman for Yates, and had been working in that capacity for Yates for a couple of years. It was customary for Yates to permit him to figure on the cost of lumber and of labor on jobs, which figures would be taken by Yates and used in his estimates in arriving at contracts.

"While the second house above referred to was under way, and almost completed, Crain told Yates that he was figuring on erecting a house for McMurray, and showed Yates a sketch of floor plans for the contemplated house, and discussed with Yates the general nature of the house, and asked Yates to figure on a price for building the house. Yates had blueprints made, and discussed with Lindsay the estimate of the cost of the supposed house. In this discussion between Yates and Lindsay, as well as between Yates and Crain, concerning the proposed house, it was considered as a house of very nearly the same sort and character as the Crain job No. 1, above referred to. Yates never individually quoted any figures on this supposed house to Crain, but Lindsay, being Yates' carpenter foreman, and knowing that the matter of the proposed house was under discussion and consideration between Yates and Crain, met with Crain and told Crain that he, for Yates, had figured on the probable cost of the proposed house, and submitted his estimate to Crain thereon, as follows: $2,055 being the actual cost to the contractor of Crain No. 1 job, plus $50 for water heater not included in Crain job No. 1, less $115, being cost of barn included in Crain job No. 1, no barn being included in the job figured on, plus $150 as profits to the contractor, totaling $2,140. This amount of this estimate Crain says Lindsay quoted him as what the total cost would be, and at which Yates would build the house, while Lindsay says he merely submitted it as an estimated cost, and had no instructions from Yates to enter into a contract with Crain, and that he did not do so, and that he told Crain it was merely his estimate of the cost, supposing that Yates and Crain would make their own contract with reference to the erection of the building. With reference to this conflict between the testimony of the two gentlemen, I am compelled to resolve the doubt in favor of the testimony of Lindsay, who seems to be entirely disinterested. After seeing Crain and making him this estimate of $2,140, Lindsay went to Yates and told him that he had made the estimate at $2,140 to Crain. On the day following that on which Lindsay so told Yates, the erection of the house in question, and concerning which the above matter transpired, was begun by Yates, and prosecuted to completion, without any further understanding or agreement between Yates and Crain or any one for him. The total cost of the house, including materials, money actually paid for labor, was $2,249.30, 7½ per cent. of which is

$168.70. The reasonable value of the house as erected was between $2,400 and $2,500. I find as a definite amount, for the purpose of arriving at a conclusion, the sum of $2,418 which I find to be the actual cost, plus 7½ per cent. thereof, which I think is a fair valuation. Crain has paid $2,140 to the plaintiff, it being agreed between the parties at the time of such payment that it should be made without prejudice to either party. The balance thus left remaining is $278."

At the request of the defendant, the court found the following additional and supplemental findings of fact:

"First. That Crain told Yates, when he requested him to figure on the job, that he would have to know what it would cost before he could tell whether he would be able to make a deal with McMurray, the contemplated purchaser, or not.

"Second. That on the only two jobs Yates did for Crain before the one in controversy, there was a definite price fixed on each job, which included Yates' compensation, to wit, $2,250 on job No. 1, the contract for which was in writing, and $3,250 on job No. 2, the contract resting in parol.

"Third. That when Lindsay quoted to Crain the estimate of $2,140 on the job in controversy, Crain told Lindsay that the price quoted was satisfactory to him, and that Yates could have the job at that price. I further find that after Lindsay quoted Crain the estimate of $2,140, that Crain left Houston for St. Louis, and was gone for several days, and when he returned Yates was at work on the job in controversy."

Upon the foregoing facts the court concluded as a matter of law that no contract between Crain and Yates concerning the price to be paid for the house existed, and that in the absence of such a contract, the price to be paid was the reasonable value of the work, labor, and materials that entered into the cost of construction.

We think that the facts as found by the court did not justify the conclusions of law based upon them. The facts show that prior to the transaction in question, Yates had constructed two houses for Crain, each for fixed, definite amounts, job No. 1 being for $2,250, and job No. 2 for $3,250. When job No. 2 was nearly completed Crain told Yates that he was figuring on erecting a house for McMurray (the house in question), and asked Yates to figure on a price for building it. He also told him he would have to know what it would cost before he could tell whether he would be able to make a deal with McMurray, the contemplated purchaser. Yates had blueprints made and discussed with his carpenter foreman, Lindsay, the estimated cost of completion. It was customary for Yates to permit Lindsay to figure the cost of labor and lumber on jobs, and his figures would be taken by Yates and used in his estimate in bidding for contracts. Lindsay, the foreman, knowing of the negotiations between his principal and Crain, told Crain that he, for Yates, had figured on the cost of construction, and that he had estimated the cost at $2,140. Lindsay also told Yates that he had made this estimate to Crain. When Lindsay gave Crain this estimate Crain told

him that the price was satisfactory, and that Yates could have the job at that price. Without further negotiations, and during Crain's absence from the city, Yates began the work of construction, and thereafter completed the same according to the plans. We think that under these facts Yates must be held to have contracted to build and complete the house for $2,140, and that when Crain paid him that sum he discharged his indebtedness to him therefor, and that he was not liable for a greater sum, although the construction of the house might have cost Yates more than $2,140. It follows therefore that the judgment of the court below must be reversed, and judgment be here rendered that Yates take nothing by his suit; and it has been so ordered.

Reversed and rendered.

<hr/>

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes