### NASSAR et al. v. NELSON.

No: 10224.

Court of Civil Appeals of Texas. San Antonio.

Jan. 5, 1938.

Rehearing Denied Feb. 2, 1938.

McDaniel, Catlett & Spell, of McAllen, and Cameron & Hardin, of Edinburg, for appellants.

Griffin & Kimbrough, of McAllen, for appellee.

MURRAY, Justice.

This suit was instituted on November 2, 1934, in the Ninety-Third district court of Hidalgo county by appellee, M. R. Nelson, against appellants, Antonio Nassar and Jose Nassar, seeking to recover the sum of $7,000, alleged to be due by appellants to appellee on an oral contract.

On December 22, 1936, appellee filed his first amended original petition, which was the pleading upon which he went to trial. In this amended petition appellee alleged that in March, 1931, the United States of America, acting through its proper agencies, determined to acquire land in the city of McAllen, to be used for the construction thereon of a post office and federal building. Appellants and others became interested in seeing said building located on South Main street, in the city of McAllen, and suggested to appellee, Nelson, that he submit a proposal to sell to the government a tract of land of sufficient size, located in either block 29 or block 36, of said original town of McAllen. At said time appellee was the owner of a number of lots in each of these blocks, but did not believe the government would pay him what he regarded as the value of the lots. In this connection the Nassar brothers agreed to pay Nelson the sum of $7,000 if he would submit a proposal to the government; the money to be paid when the proposal was accepted by the government. The Nassars agreed to pay $5,000 of this sum as contemplated benefit to property owned by them and $2,000 for contemplated benefit to property owned by one Zambrano.

In keeping with this agreement, Nelson did submit a proposal to sell a sufficient tract of land for such post office site to the government out of block 29. On June 27, 1931, this proposal was accepted by the United States goverment. Shortly thereafter, Nelson demanded of the Nassar

brothers that they pay to him the sum of $7,000, as they had agreed to do. Appellants then asked appellee not to require them to pay such sum at that time, but to give them until such time as the title was actually vested in the government, which request was granted. Considerable trouble arose concerning the title to part of the tract of land, resulting in the government having to institute condemnation proceedings, as had been provided for by the contract of sale existing between Nelson and the government. As a result of this delay title was not finally vested in the government until January 27, 1933.

Shortly thereafter, appellee again demanded of appellants that they pay to him the sum of $7,000, but they again requested that payment be postponed until the construction of the building had actually been commenced; this request was also granted, according to the allegations of the amended petition, although the record shows that the suit was actually filed several days before the construction of the building was begun. The United States government actually began the construction of the building on or about December 1, 1934.

■ It is plain from the amended petition that all of the agreements were oral and that the agreement to pay the $7,000, when the bid was accepted by the government, was barred by the two years' statute of limitation, unless the statute was tolled by the subsequent agreements. American Rio Grande Land & Irrigation Company v. King, Tex.Civ.App., 107 S.W.2d 1085; article 5526, R.C.S.1925.

■ The subsequent agreements to defer the time of payment of the $7,000 were not based upon any mutual consideration, and were therefore nuda pacta. First State Bank of Eustace v. Bowman, Tex.Civ.App., 203 S.W. 75. According to the allegations of the petition, the $7,000 was due when the bid was accepted by the government. This happened on June 27, 1931, more than two years before the suit was filed. Appellants never agreed to do anything more than they were already obligated to do in consideration of the indulgence extended to them by appellee. They did not agree to pay any more money, or any interest on the money then due and payable by them. There was no consideration for such extension agreements.

The petition showing on its face that the debt was barred by the two years' statute of limitation, the trial court should have sustained appellants' demurrers to the petition, and his failure to do so constitutes reversible error. Accordingly, the judgment is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

. ■ Appellee contends that we were in error in holding that his first amended original petition showed on its face that plaintiff's cause of action was barred by the two years' statute of limitation, R. C. S.1925, art. 5526, because the amended petition does not show when the original petition was filed. It is conceded by appellee that the original petition is included in the transcript, and that the file mark on the original petition discloses that this suit was instituted more than two years after the original cause of action arose. Appellee's contention is that the trial court could not refer to the original petition to determine when the suit was filed, in passing upon the exception setting up limitation directed to the first amended original petition. There are some early cases supporting appellee's contention, but the rule is now clearly to the contrary. Mothner v. Granata, Tex.Civ. App., 69 S.W.2d 775; Braddock v. Brockman, Tex.Civ.App., 49 S.W.2d 908; rules 13 and 14 for the District and County Courts, 142 S.W. XVIII. Rule 13 provides that a party amending shall point out the instrument with, its date sought to be amended. It was therefore appellee's duty, when he filed his first amended original petition, in lieu of his original petition, to give the date of his original petition. Rule 14 provides, in effect, that in passing upon questions of limitation superseded pleadings may be looked to. Under the above decisions and court rules, it is the duty of the court, in passing upon a question of limitation raised by exception, to refer to superseded pleadings to determine the date on which the suit was instituted.

■ Appellee next complains that inasmuch as he pleaded estoppel to the plea of limitation, in his amended petition, such petition was not therefore subject to an exception setting up the plea of limitation. As an abstract proposition of law we agree with this contention, if the plea of estoppel contained sufficient allegations to make a prima facie case of estoppel to the plea of limitation. Appellee's plea of estoppel is contained in paragraph 13 of his amended petition, and reads as follows: "Plaintiff is informed that defendants are claiming that

the debt sued for is barred by the statute of limitations of the State of Texas, requiring certain actions to be instituted within two years after accrual of the cause of action; but plaintiff says that defendants have waived such plea and estopped themselves to set up such plea of limitation by making the promises, hereinabove set forth, subsequent to said original promise, first, to pay said debt when the title to the post-office site was finally acquired by the United States, and second, to pay same when the Government commenced construction; at any rate, said statute of limitation cannot be set up by defendants as beginning to run from a date earlier than the commencement of construction of said post-office building, as hereinabove pleaded, on or about December 1, 1934."

It is clear that this plea refers to the same promises which are fully set out in other parts of the petition. It appears from the entire petition that these promises were nothing more than oral promises to pay in the future, and made after the indebtedness was due. Article 5539, R.C.S.1925, reads as follows: "When an action may appear to be barred by a law of limitation, no acknowledgement of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

 It is plain from the above article that such promises as are described in appellee's petition are inadmissible for the purpose of taking a claim out of the operation of the statutes of limitation; and it occurs to us that such promises are ineffectual to take a claim out of the operation of the law on limitations even though they be set up as constituting estoppel. San Antonio Real Estate Building & Loan Association v. Stewart, 27 Tex.Civ.App. 299, 65 S.W. 665.

▮ Appellee next contends that we were in error in holding that his amended petition showed on its face that he was suing on an oral contract. The whole import of the amended petition is that the suit is based upon an oral contract. The petition expressly states that the defendant, Antonio Nassar, ratified and confirmed the proposal and proposition on the part of the defendant, Jose Nassar, in an oral conversation. Said petition also affirmatively states that the promise by the two Nassars to pay $2,000 on account of the benefit to

property owned by Zambrano, was an oral promise.

Appellee, in stating the nature of his cause of action, uses the following language: "Appellee's cause of action is a simple action of debt upon an oral agreement under which it is alleged that the appellee undertook to induce the Federal Government to locate the post-office site, etc." We feel that we were not in error in placing upon appellee's amended petition the same construction which he/himself places on it in his brief.

We have carefully considered all the other assignments contained in appellee's motion for rehearing, and they are also overruled. Appellee's motion for rehearing will accordingly be overruled.

▮ Appellants have also filed a motion for rehearing, insisting that we should not remand this cause to the trial court, but should here render judgment for appellants. We have carefully considered this motion, and it is likewise overruled.